UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x      06 CV 00014
HARBIR SINGH and DOINA CARAGATA,

              Plaintiffs,      Index No.:

   -against-

HERBALIFE INTERNATIONAL
COMMUNICATIONS, INC., HERBALIFE      **COMPLAINT**
INTERNATIONAL OF AMERICA, INC., and  **JURY DEMANDED**
STEVE PETERSON,

              Defendants.
------------------------------------x

    Plaintiffs, by and through their attorneys, Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP, allege upon information and belief:

### JURISDICTION AND VENUE

    1.  As the amount in controversy exceeds $75,000 and there is a diversity of the parties, this Court has jurisdiction pursuant to 28 U.S.C. §1332. Venue is proper in this District because plaintiffs reside in New York County and the injury occurred in New York County.

### GENERAL ALLEGATIONS

    2.  Plaintiff, HARBIR SINGH, was and still is a resident of the City of New York and the State of New York.

    3.  His wife, DOINA CARAGATA, was and still is a resident of the city of New York and the State of New York.

4. Defendant, HERBALIFE INTERNATIONAL COMMUNICATIONS, INC. is a California Corporation, which has its principal place of business in California. At all times relevant hereto, this defendant was engaged in the business of developing, manufacturing, testing, labeling, supplying, distributing, promoting and selling the product Herbalife containing, among other things, ephedra. This defendant does business in New York and, at all times relevant hereto, sold and supplied Herbalife in interstate commerce and in New York.

5. Defendant, HERBALIFE INTERNATIONAL OF AMERICA, INC. is a Nevada Corporation, which has its principal place of business in California. At all times relevant hereto, this defendant was engaged in the business of developing, manufacturing, testing, labeling, supplying, distributing, promoting, and selling the product Herbalife containing, among other things, ephedra. This defendant does business in New York and, at all times relevant hereto, sold and supplied Herbalife in interstate commerce and in New York.

6. Defendant, STEVE PETERSON is a resident of the state of Florida. At all times relevant hereto, this defendant was engaged in the business of supplying, distributing, promoting and selling the product Herbalife containing, among other things, ephedra. This defendant does business in New York and, at all times relevant hereto, sold and supplied Herbalife in interstate commerce and in New York.

7. The aforesaid Herbalife product, had been designed, manufactured, marketed and distributed by defendants as a "life-enhancing product" to "help you reach and maintain your ideal weight" and was represented as being a "unprecedented weight loss & nutritional product for better health." In addition, the product was marketed to the public as having been safe and effective.

8. Defendants engaged in nationwide advertising and promotional blitzes to convince the American public that the use of Herbalife was a scientifically and medically safe way to lose weight as well as gain energy.

9. The defendants marketed and sold their weight loss products directly to plaintiff through the World Wide Web (internet), through one or more distributors, and, in addition, they sold their weight loss product directly to the plaintiff as a distributor of Herbalife products.

10. Defendants made specific claims to consumers that, *inter alia*, they "combined the best of nature and science to create a family of products that enhance our nutritional fitness, vitality and well-being" and that the ephedra product was "the result of extensive research and testing by leading scientists, nutritionists, doctors and cosmetologists."

11. Defendants purposefully downplayed and understated the health hazards and risks associated with ephedra.

12. Through promotional literature, the World Wide Web (internet) and testimonials from users of Herbalife ephedra products, the defendants encouraged the belief that there were no serious side effects, complications and/or health hazards or risks, when taking the ephedra product and that the product had been clinically tested for safety and efficacy and were medically proven safe.

13. Ephedra can raise blood pressure, increase the heart rate, and can cause seizures, strokes, brain injury, heart failure and sudden death. Defendants did not adequately test for these potential adverse effects before promoting their product for widespread use, but defendants had learned of these potential adverse effects before its product was ingested by plaintiff. Defendants kept silent and allowed the plaintiff to take their product.

14. The product purchased and ingested by the plaintiff was unsafe for its intended and reasonably foreseeable purposes and uses at the time distributed, sold or supplied by defendants because the known side effects and adverse consequences outweighed the benefits of the product, if any. Those side effects and adverse consequences include the injuries suffered by plaintiff.

15. The product purchased and ingested by the plaintiff was defectively designed because, for example, it combined ephedra (ma huang) and caffeine (guarana). Defendant knew such a

chemical/herbal concoction would likely cause injury, or, in the alternative could potentially cause injury. The aforesaid product left the defendants' hands in this defective condition and reached plaintiff in the same or substantially same condition without any material alteration nor any material adulteration.

16. Defendants failed to provide FDA and state agencies with all the necessary and available information on the product, its contents and reports of adverse events in consumers. Defendants purposefully withheld information necessary to determine the adequacy of the label and the safety and efficacy of the product purchased and ingested by the plaintiff.

17. There was not a timely, adequate, and accurate disclosure of adverse reactions in the label or otherwise even though defendants knew or should have known such adverse reactions. The failure to give adequate instructions and warnings in an adequate manner rendered the product dangerous to any extent beyond that which would be contemplated by the ordinary consumer.

18. At all relevant times, the defendants knew that there were numerous other reliable and effective methods of controlling weight which posed less risks than the product, yet, defendants failed to disclose such information to the plaintiff.

19. Plaintiff daily consumed Herbalife from on or about May 2002 through May 10, 2003.

20. On or about May 10, 2003, plaintiff consumed Herbalife and plaintiff sustained a serious stroke, from which he sustained acute and permanently disabling injuries, and has incurred and will incur special damages, including medical bills and a loss of earnings, due to the use of the defendants' product.

21. Plaintiff claims that one or more of the exclusions set forth in Article 16 of the CPLR apply herein.

### FIRST CAUSE OF ACTION - NEGLIGENCE OF DEFENDANTS

22. Defendants were negligent in their developing, manufacturing, testing, labeling, supplying, distributing, promoting, and selling of the product and failed to adequately warn plaintiff about the life threatening risks associated with taking its product, including the risk of a stroke.

23. Defendants' product was adulterated, impure and off strength.

24. Defendants' product was not tested for either strength or purity, nor tested in human beings for efficacy and safety purposes.

25. As a result of the foregoing, plaintiff was seriously and permanently injured, both physically and mentally.

26. Defendants are liable to plaintiffs in the amount of TEN MILLION ($10,000,000.00) DOLLARS.

27. The conduct of defendants was so willful, wanton, malicious, reckless and in such disregard for the consequences as

to reveal a conscious indifference to the clear risk of serious bodily injury and merits the imposition of punitive damages in the amount of THIRTY MILLION ($30,000,000.00) DOLLARS, in addition to compensatory damages.

### SECOND CAUSE OF ACTION - STRICT PRODUCT LIABILITY

28. Plaintiffs repeat and reallege paragraphs 22 through 27.

29. Defendants developed, manufactured, tested, labeled, supplied, distributed, promoted and sold a product that was unreasonably dangerous.

30. The product was defective and unreasonably dangerous when defendants placed it into the stream of commerce.

31. By engaging in said conduct, defendants are strictly liable to plaintiffs.

### THIRD CAUSE OF ACTION - BREACH OF WARRANTY

32. Plaintiffs repeat and reallege paragraphs 22 through 27, and 29 through 31.

33. Defendants have breached applicable warranties, express and implied, and are therefore liable to plaintiffs.

### FOURTH CAUSE OF ACTION - LOSS OF CONSORTIUM

34. Plaintiffs repeat and reallege paragraphs 22 through 27, 29 through 31 and 33.

35. That at all times relevant hereto, the plaintiffs were husband and wife and as a spouse, the plaintiff DOINA CARAGATA, was and still is responsible for the care, maintenance and medical expenses of the injured party.

36. That at all times relevant hereto, the plaintiff DOINA CARAGATA, was deprived of the services and society of the injured plaintiff and liable for any and all expenses incurred on the injured plaintiff's behalf.

37. That as a result of the aforementioned, plaintiff, DOINA CARAGATA has been damaged in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS.

**WHEREFORE**, plaintiffs, HARBIR SINGH and DOINA CARAGATA, demand judgment against the defendants, jointly and severally, in the amounts of:

a. on the First, Second and Third and Fourth Causes of Action in the amount of TEN MILLION ($10,000,000.00) DOLLARS;

b. on the Fourth Cause of Action in the amount of FIVE HUNDRED ($500,000.00) dollars.

c. punitive damages in the amount of THIRTY MILLION ($30,000,000.00) DOLLARS;

d. together with interest, costs and disbursements;

e. such other and further relief as this Court deems just and proper.

8

Dated: New York, New York
December 28, 2005

_David B. Rheingold, Esq. (4676)_
RHEINGOLD, VALET, RHEINGOLD,
SHKOLNIK & McCARTNEY LLP.
113 East 37th Street
New York, New York 10016