```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                           :
In re: EPHEDRA PRODUCTS LIABILITY          :    04 M.D. 1598 (JSR)
LITIGATION                                 :
                                           :    MEMORANDUM ORDER
------------------------------------------X
```

PERTAINS TO *Harbir Singh et al v. Herbalife Int'l Communications, Inc. et al.*, No. 06 Civ. 00014

JED S. RAKOFF, U.S.D.J.

Defendants' motion to exclude the expert testimony of Lawrence W. Shields, M.D, plaintiffs' retained case-specific neurologist, is granted in part and denied in part.

First, the Court excludes as insufficiently reliable under Rule 702, Fed. R. Ev., Dr. Shields' testimony as to the effects of ephedra on this plaintiff, including his opinion that "it may be stated with a reasonable degree of medical certainty that Harbir Singh's use of Herbalife . . . more likely than not substantially contributed to that subarachnoid hemorrhage and had Harbir Singh not used Herbalife . . . more likely than not he would not have suffered subarachnoid hemorrhage. . . ." Declaration of Joanne M. Gray dated May 14, 2007 ("Gray Decl."), Ex. D ("Shields Rep.") at 15. The reports and testimony of the generic experts in this MDL have shown that the effects of ephedra are dose-sensitive and short-lived. For a case-specific expert's causation opinion to be reliable, it must be based on a careful analysis of the available facts about how much ephedra

1

the injured person consumed and when.

Here, Dr. Shields wrote his report with no clear idea of the dose Mr. Singh was taking.  Although Dr. Shields' report does not expressly state the dose that underlay his conclusions, his report posits a dose of 126 mg./day, see Shields Rep. at 2, which is three times the amount shown by the evidence, see Gray Decl. Ex A ("Singh Dep.") at 349:11-350:10; Gray Decl. Ex. C.  Moreover, in his testimony at his recent "Daubert" hearing, see transcript 7/9/07, Dr. Shields reconfirmed that he had been assuming at the time he wrote his report that the dose was triple the actual dose.  Id. at 10-11.  Having subsequently become aware that that was likely an error, Dr. Shields testified that his opinions quoted above would still be the same even if the dose approached zero.  Id. at 13-14.  This extreme position cannot be sustained consistent with the Court's prior rulings.  See In re Ephedra Products Liability Litigation, 393 F.Supp.2d 181 (S.D.N.Y. 2005).

As for timing, Dr. Shields' report was based on the assumption that Mr. Singh consumed ephedra on the morning of his stroke, see Shields Rep. at 2, despite contrary testimony in Mr. Singh's deposition, see Singh Dep. at 345:9-12.  Arrogating to himself an unsupported expertise in assessing credibility, Dr. Shields chose at his Daubert hearing to discredit Singh's deposition testimony, see transcript 7/9/07 at 5-6, even though

plaintiff's counsel subsequently stipulated that plaintiff did not ingest ephedra on the day of his stroke, see id. at 37. Although Dr. Shields proffered a new theory, in which, even if the ephedra had been ingested the day before the stroke, it still might have indirectly contributed to the stroke, where an expert's report is based on factual errors of the magnitude here present, the opinions therein cannot be made reliable retroactively by the expert's subsequent conjectures, for they partake too much of after-the-fact rationalization to be the product of scientific method.

Dr. Shields' subsequent rationalizations were also fatally compromised by plaintiffs' counsel's refusal to provide him with the brain images that were directly relevant to his new theory of how ephedra allegedly caused Mr. Singh's stroke. Dr. Shields expressly requested the images from plaintiffs' counsel, as he does as a matter of course when opining on cases such as this one, but plaintiffs' counsel chose not to provide Shields with the images, purportedly on the ground that plaintiff's counsel had somehow determined that review of such images was not within Dr. Shields' area of expertise, see id. at 15-18. But Dr. Shields, by his own testimony, relies on such brain images in order to reach a reasoned conclusion in these cases. See id. at 16, 19-20. If an expert's own failure to consistently apply his methodology can form the basis for the exclusion of any resulting

opinions, see, e.g., Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 269 (2d Cir. 2002), then it is obvious that where such failure is the product of the decision by the very party that is relying on the expert's opinion to withhold from the expert the data he requests, such purposeful exclusion renders the opinion both unreliable and inadmissible.

The Court will, however, allow Dr. Shields' testimony concerning the opinions contained in his report that do not relate to ephedra's effects. These include Dr. Shields' factual observations derived from his physical examination of Mr. Singh and his review of Singh's medical history, see Shields Rep. at 10-14, as well as Dr. Shield's opinions concerning risk factors other than ephedra, including his opinion that they were insufficient in themselves to cause Mr. Singh's stroke.

Thus, even though the testimony concerning ephedra's causative aspects is excluded, the remainder of the following statement from Dr. Shields' report is admissible if proffered as testimony at trial.

> Consideration of the differential list of precipitants of aneurysmal rupture above in the light of review of Mr. Singh's medical records eliminates all precipitants except for his use of the ephedra containing product Herbalife. Cigarette smoking, in Mr. Singh's case, is a predisposing risk factor. Mr. Singh is not hypertensive. The elevated blood pressure recorded on admission was the result, not the cause of, his subarachnoid hemorrhage. . . .

Shields Rep. at 14.

In summary, defendant's motion to exclude the testimony of plaintiffs' case-specific neurologist is hereby granted with respect to any and all testimony relating to ephedra causation and effects and denied in all other respects.

SO ORDERED.

                                                            JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 13, 2007